[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on September 9, 1967 in New York, New York. The parties have lived in Connecticut for the past 24 years. There is one minor child issue of the marriage: Luke Armshaw, born April 22, 1980.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in §46b-56, § 46b-81, § 46b-82 and § 46b-84
CT Page 320 of the Conn. General Statutes in reaching the decisions reflected in the orders that follow.
This is a marriage of some 27 years. However, the parties have lived apart since February 1991, approximately four years, in a rather bizarre arrangement.
The defendant wife left the marital home on February 1, 1991, and obtained a one room apartment. During the separation, she returned to the family home on a rather frequent basis while the plaintiff husband was at work to do some cleaning and cooking and provide some care for the youngest child who was ten years old at the time of the separation. Up to a certain point, the wife had access to the credit cards and the joint checking account of the parties. The two older boys, both over the age of 18, have had alcohol/drug related problems. One boy is in a halfway house and is hopeful of returning home some time in the future. The oldest boy is presently gainfully employed and in treatment. He continues to reside in the marital home. Both boys have incurred substantial medical costs involving their care and treatment which have been paid by the plaintiff.
The plaintiff has resigned himself to the fact that the defendant is not returning home. He instituted this dissolution action to bring some finality to his life as well as to his family.
The plaintiff is employed in New York City as an international tax manager. During the past three and one-half years, he has been primarily responsible for the care and upbringing of the minor child, Luke, who will be 14 years of age in April 1995. The plaintiff claimed he did the grocery shopping, laundry and meals for himself and Luke as well as for their oldest son, who continues to live in the marital home. The plaintiff provided the necessary care for the minor child on weekends when he was at home. He cut off the defendant's access to credit cards and joint banking accounts when this suit was instituted.
The defendant completed her nursing education in 1988. She presently works three 12 hour shifts, going to work at three p. m. This schedule has allowed her to go to the marital home several days a week where she visited with the minor son who came home from school at 2:30 p. m.
The defendant claims the husband drank to excess and became verbally abusive when in that condition. She claims the parties had no social life. An incident that occurred ten years ago at her CT Page 321 brother's wedding is still an open and festering wound insofar as the defendant is concerned. The defendant is presently being counseled by a psychiatrist.
During the separation, the parties have been able to communicate over the many crises involving their three children. The two older boys, Jonathan and Matthew, were arrested in January 1994 and both children are still having drug problems.
The defendant is 48 years of age. She indicated she wanted to live and have a life for herself. During the separation, the plaintiff paid the defendant's car tax and insurance. The defendant also had access to the credit cards and joint account which she used for the children.
After the institution of this dissolution, the plaintiff gave the defendant $600 per week for her own use.
The plaintiff has a gross income of approximately $145,000 per year. He has a 401(K), a pension plan and a stock purchase plan which generates some additional income, as set forth in his financial affidavit.
The defendant is earning approximately $43,000 per year gross. Her net income is approximately $2350 per month.
The major asset of the parties and the major bone of contention between the parties is the marital home. The home has a fair market value of $300,000. It is subject to a mortgage of $32,000 and a home equity loan of $75,000, leaving an equity of $193,000.
The plaintiff would prefer to keep the home to maintain some stability for his minor son, as well as his other two sons. A sale of the marital home at this time might not be in the best interests of the minor child. The defendant wishes to return to the marital home and testified as to the amount of work she had poured into this home. There was no dispute that she performed substantial work to the home; on the other hand, it was the plaintiff who provided the sums for the necessary improvements.
The defendant was apparently satisfied with her way of life during the past four years — that is living in a one room apartment with visits to the marital home. It was her intent to continue along this path indefinitely, leaving the responsibilities for this CT Page 322 home and the minor child to the plaintiff.
Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the breakdown of the marital relationship.
The court has carefully considered the statutory criteria in entering the following orders.
CUSTODY AND VISITATION
1. There shall be joint legal custody of the minor child with primary physical custody to the plaintiff.
2. The defendant shall have reasonable, liberal and flexible visitation with the minor child, keeping in mind the desires of the minor child and his activities.
3. The plaintiff shall confer with the defendant on all matters concerning health, welfare and education of the minor child.
4. The plaintiff shall be responsible for the medical bills of the minor child and shall maintain medical coverage as is available through his employment for the benefit of the minor child.
5. No order of support for the minor child is entered at this time. This order shall be modifiable.
REAL ESTATE
1. It would serve no useful purpose to order the real estate sold at this time. The plaintiff ought to be allowed to continue to assume his responsibilities for the home and his family, especially the minor child, as the wife has chosen her pattern of living.
However, the defendant is entitled to a share of this marital asset and should not nave to wait until the minor child reaches the age of 18 years, especially in view of the present financial circumstances and living arrangements.
2. Within 120 days of date, the plaintiff shall pay to the defendant the sum of $89,000, representing the defendant's value of CT Page 323 her present interest in the real estate. Upon payment to the defendant, the defendant shall quitclaim her interest in the real estate to the plaintiff. The plaintiff shall be solely responsible for the mortgage and home equity loan and shall hold the defendant harmless therefrom.
3. In the event the plaintiff is unable to obtain the necessary funds to buy out the defendant's interest, the house shall be placed on the market and sold. Upon the sale of the real estate, after the payment of the real estate commission, usual closing costs, mortgage, home equity loan and attorney's fees, the net proceeds shall be divided equally between the parties.
4. In the event of a sale as set forth above, the defendant shall have the right of first refusal to be exercised within two weeks after receiving written notice from the plaintiff of a bona fide offer to purchase.
5. The court shall retain jurisdiction over any disputes arising out of the sale of the real estate.
6. In the event the real estate is placed on the market for sale, the plaintiff shall be responsible for the mortgage, taxes and home equity loan until the premises are sold. The plaintiff shall be entitled to a credit for any paydown he has made on the principal of the mortgage or home equity loan until the home is sold.
7. The plaintiff shall be entitled to exclusive possession of the marital home.
ALIMONY
1. The plaintiff shall pay to the defendant as alimony the sum of $1250 per month until the death of the plaintiff, the death of the defendant, or her remarriage or cohabitation as defined by statute.
2. Said award of alimony shall commence on February 1, 1995.
PENSIONS AND IRAs
1. The defendant shall be entitled to a 50% interest in the plaintiff's GTE pension to be secured by means of a QDRO. CT Page 324
2. The defendant shall be entitled to a 50% interest in the present value of the plaintiff's Marsh McLennan pension, to be secured by means of a QDRO.
3. The defendant shall retain her IRAs and any interest she may have in any pension or retirement plan through her employment.
4. The plaintiff shall transfer $5000 from his IRA to the defendant's IRA.
OTHER PROPERTY
1. The defendant shall retain her interest in the Rene Place property in Fairfield, Connecticut.
2. The plaintiff shall retain his O'Day sailboat and shall be solely responsible for the outstanding loan thereon.
3. Each party shall be entitled to retain their respective motor vehicles.
4. Each party shall retain the remaining assets as shown on their respective financial affidavits, unless otherwise disposed of herein.
DEBTS
1. The plaintiff shall be responsible for the debts as listed on his financial affidavit.
2. The defendant shall be responsible for the debts as listed on her financial affidavit.
COUNSEL FEES
Each party shall be responsible for their respective attorney's fees.
LIFE INSURANCE
The plaintiff shall maintain $300,000 (three hundred thousand dollars) life insurance for the benefit of the defendant for so long as the plaintiff has an obligation to pay alimony. This provision shall be modifiable. CT Page 325
MISCELLANEOUS
The personal property and household furnishings located in the marital home shall be divided between the parties, as they shall agree. If the parties are unable to agree, they are referred to Family Services for mediation and, if this is unsuccessful, the parties shall return to court for a hearing thereon.
Coppeto, J.